UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHELLE WILE,

    Plaintiff,

      v.

MAINE VETERANS' HOMES,

    Defendant.

Civil Action No.

**COMPLAINT**
**JURY TRIAL REQUESTED**
**INJUNCTIVE RELIEF REQUESTED**

NOW COMES the Plaintiff, Michelle Wile ("Wile"), by and through undersigned counsel, and complains against the Defendant, Maine Veterans' Homes ("MVH"), as follows:

INTRODUCTION

1.     This action arises under the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.* the Maine Family Medical Leave Requirement Act ("MFMLR"), 26 M.R.S. §§ 844 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act ("Rehab Act"), 42 U.S.C. §§ 12101 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

PARTIES

2.     Wile is a United States citizen residing in Augusta, Maine.

3.     MVH a public, not-for-profit organization created by the 108th Maine legislature in July, 1977. MVH operates as a separate corporation. It works closely with state and federal agencies, veterans' service organizations, the Department of Veterans Administration, and local communities to provide long-term care services to veterans and eligible family members.

## JURISDICTION

4.      MVH had 50 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

5.      MVH had 50 or more employees working within a seventy mile radius of Plaintiff's workplace in 2013 and 2014.

6.      MVH had 15 or more employees working in the same workplace as Plaintiff in 2013 and 2014.

7.      MVH operates a program or activity receiving federal financial assistance within the meaning of the Rehab Act.

8.      This Court has subject matter jurisdiction over Wile's federal and state claims pursuant to 28 U.S.C. §§ 1331and 1367.

9.      On or about February 9, 2015, Wile filed a timely Complaint of Discrimination against MVH alleging unlawful disability discrimination and retaliation with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

10.      On or about December 11, 2015, the MHRC issued a Notice of Right to Sue with respect to Wile's MHRA claims.

11.      On or about December 28, 2015, the EEOC issued a Notice of Right to Sue with respect to Wile's ADA claims.

12.      Wile has exhausted her administrative remedies with respect to all claims requiring administrative exhaustion set forth in her Complaint.

## FACTUAL ALLEGATIONS

13.      Wile was employed in the Finance Department as the Accounts Receivable Manager for MVH from June 6, 2005 until she was unlawfully terminated on October 16, 2014.

14.      Wile's salary was about $71,000 per year at the time of her termination.

15. Wile reported to the Controller, Jeremy L. Storer, CPA.

16. The Finance Department reported to the Chief Financial Officer ("CFO"), Robert St. Pierre.

17. Wile supervised five billing specialists. They handled accounts receivable for all of MVH's facilities.

18. Wile's job performance was always at least satisfactory and often exceeded expectations.

19. Wile was the Employee of the Year for 2008.

20. Performance ratings are on a scale of 1 to 4. The highest rating, 4, means "performs above standards."

21. Wile's performance ratings when she was evaluated in 2011, 2012, 2013 and 2014 were all satisfactory or better (between 3 and 4).

22. Wile received performance based pay merit increases in July 2011 (from $32.00 to $32.76), July 2012 (from $32.76 to $33.82), and July 2014 (from $33.82 to $34.63).

23. MVH has a progressive discipline policy.

24. Wile received no discipline during her employment.

25. At all times during Wile's employment, she was able to perform the essential functions of her job and performed them satisfactorily.

26. Wile is an alcoholic.

27. In 2008, Wile was admitted to a treatment facility for alcohol detoxification. After that, she stopped drinking for years.

28. Wile also has Major Depressive Disorder. She was diagnosed in about March 2013 and has been treated for depression ever since.

29.     Wile's alcoholism and depression constitute "disabilities" under the MHRA, ADA, and Rehab Act and "serious health conditions" under the FMLA and MFMLR.

30.     Wile's doctor recommended that Wile take a two week medical leave of absence from work for her depression from March 14 to 29, 2013.

31.     From December 20, 2013 to January 13, 2014, Wile took a medical leave of absence for gastric bypass surgery and recovery.

32.     During that leave of absence, Wile separated from her husband and was treated for depression.

33.     Defendant was aware of Wile's disabilities during her employment.

34.     At about the time of Wile's positive 2014 performance evaluation (June or July 2014), Wile told her supervisor, Storer, that she was struggling with depression.

35.     On Thursday, July 31, 2014, not long before Wile's divorce was scheduled to be finalized, Wile had a severe crisis and was admitted to the psychiatric unit at the Alfond Center for Health, MaineGeneral Medical Center for treatment of depression and alcoholism.

36.     Defendant received a letter dated August 6, 2014 from a MaineGeneral Medical Center Licensed Social Worker about Wile's absence.

37.     Wile's request and need for a leave of absence from July 31 to August 6, 2014 was a disability-related reasonable accommodation.

38.     Wile was released to return to work on August 11, 2014 with a schedule accommodation. She was restricted to working six hours per day for the first week (August 11-18, 2014).

39.     Wile was not ready to return to work and was hospitalized again with suicidal ideation at St. Mary's Regional Medical Center from August 18 to 25, 2014.

40.     Wile was treated at St. Mary's Regional Medical Center for depression and substance abuse.

41.     During Wile's leave of absences, Wile's mother and older son kept in touch with the Human Resources Department at MVH about her condition.

42.     During August 2014, Wile used up her Earned Benefit Time which had provided her with income during her leaves of absence.

43.     MVH Human Resources suggested that Wile apply for and collect short term disability benefits.

44.     While Wile was out of work in August 2014, Storer told the Payroll Benefits Manager, Penny Redmond that a Human Resources staff member was talking about Wile's medical situation.

45.     When Wile returned to work on August 25, 2014, she was restricted to working only four to six hours daily for two weeks. She was released to work full time thereafter.

46.     On about October 1, 2014, MVH Human Resources told Wile that it had never received medical certification from her healthcare provider for her latest leave of absence. Wile was asked to return the completed paperwork by October 8, 2014.

47.     On October 7, 2014, Wile's healthcare provider faxed the medical certification requested to MVH Human Resources. The paperwork indicated that Wile's depression was "lifelong," that it had lasted for "several years," and that the episode in August was an "acute flare." The certification indicated that Wile "sees mental health providers and counselor," that she takes medication and that she will need treatment visits at least twice a year due to her condition.

48.     On October 14, 2014, Wile was called to a meeting with Storer and St. Pierre.

49.     Storer and St. Pierre told Wile that the performance of her staff and department had been unsatisfactory for the past year and that they were going to terminate her from her position.

50.     Storer and St. Pierre told Wile that bad debt was up and that accounts receivable (AR) was also up due to her lack of oversight of her staff.

51.     Wile was completely shocked. She had no idea that anyone had any concerns about her job performance.

52.     Wile denied that bad debt and AR were up because of her lack of oversight because it wasn't true.

53.     For several years prior to FY2014, the senior external auditor for MVH advised the Board of Directors and the Senior Management team that the allowance for bad debts was too low and needed to be increased.  However the Board only allowed a small percentage of the actual bad debt on the books to be "written off." This created inaccurate financial statements, showing much less bad debt than the organization had. There was always hundreds of thousands or millions of dollars of accounts that were not collectible but were left on the ledger.

54.     St. Pierre and Storer were well aware of this and were reminded of it monthly by Wile as well as annually by the auditors.

55.     In 2013/2014, MVH migrated to a new financial system, a huge undertaking by Wile and the billing staff.

56.     Storer and Wile decided that it was time to finally get all of the bad accounts written off the books and to go into the new system with clean, accurate numbers. St. Pierre was well aware of this as well. That was why the bad debt numbers in 2014 seemed to be higher than in years past.

57.     For MVH to say that managers were "shocked" at the bad debt numbers is a lie.

58.     During the October 14, 2014 meeting, Storer and St. Pierre told Wile that her only other option was to apply for a newly created Collections Specialist position at a pay rate that was substantially less than her annual salary of $71,000. Storer and St. Pierre told Wile that if she was interested, the job was available.

59.     Wile asked Storer and St. Pierre, "Where is this coming from?" "What is this really about?" They did not respond.  St. Pierre ended the meeting.

60.     Wile went back to her office and told her staff that her job was in jeopardy.

61.     The following day, Wile went to work as usual. At about 9 AM, she was called into a meeting with Storer and Lori Ouellette from Human Resources.

62.     Storer told Wile that she was terminated and was being offered a severance package.

63.     Wile broke down and cried. She told Storer, "I don't understand," and "Where is the transparency?" in reference to the lack of any notice that her performance was lacking or that her job was in jeopardy.

64.     Storer and Ouellette provided no explanation for Wile's termination.

65.     Confused and in tears, Wile wanted to clarify what Storer meant and asked him, "Would you like me to leave?" Storer said, "Yes." At that point, Wile went downstairs to her office, cleaned out all of her personal belongings and said goodbye to her co-workers.

66.     During this meeting, Storer handed Wile a document entitled "Separation Agreement and General Release".

67.     This document stated, among other things:

- "Wile's employment with MVH will end on October 16, 2014, (the "Separation Date").

- "Wile acknowledges and agrees that as of the Separation Date, she ceased to be employed by MVH, that she will not be re-employed by MVH, and that she does not possess any rights or claims to any future employment, pay or benefits with MVH".

68.     Wile understood from the termination of her employment, the statements made by Storer, and the language of the document provided to her on October 15, 2014 that MVH was terminating her employment with MVH.

69.     MVH has subsequently alleged in this case that it did not terminate Wile's employment and that rather she voluntarily resigned from her employment with MVH.

70.     This claim by MVH is false and evidences an effort by MVH to dissemble the facts to cover up a discriminatory purpose.

71.     Wile was never provided with an opportunity to apply for a "newly created Collections Specialist position" as Storer and St. Pierre promised on October 14, 2014.

72.     In November 2014, Defendant promoted an employee without a disability or serious health condition to the position of Accounts Receivable Manager.

73.     Wile qualified for and received benefits under the FMLA and the MFMLR for the medical leaves of absence she took in 2013 and 2014.

74.     MVH proposed to demote and terminated Wile because of her disabilities and serious health conditions and because of her request for reasonable accommodations and family medical leave.

75.     *Membership in protected class/disability/serious health condition:* Wile has disabilities and serious health conditions as defined by the MHRA, ADA, Rehab Act, FMLA and MFLMR.

Wile has Major Depressive Disorder, which is a *per se* disability under the MHRA. Wile's Major Depressive Disorder has lasted since March 2013 and it substantially limits major life activities of concentrating and thinking. Wile is also addicted to alcohol. Her addiction has lasted for over six years. Wile's alcoholism substantially limits the functioning of her neurological system. Together, Wile's alcoholism and depression significantly impair her physical and mental health when viewed without mitigating measures. Wile received treatment on multiple occasions for both her alcoholism and depression; received an ongoing treatment regimen for these conditions; and was hospitalized for these impairments. Wile's medical providers determined that she required leave from work because of her impairments. Wile's depression is a comorbid condition with her alcoholism. Wile also has a record of disability under the MHRA, ADA and Rehab Act in connection with her alcoholism and depression. Defendant knew of Wile's alcoholism and depression and regarded Wile as disabled. For example, Defendant labeled Wile as "disabled" when it suggested that she apply for short term disability benefits. Wile was a qualified individual with a disability as defined by the MHRA, ADA and Rehab Act. Wile was able to perform the essential functions of the Account Receivable Manager position with or without reasonable accommodation.

Wile's depression and alcoholism also constitute chronic conditions as defined by the FMLA and MFMLR insofar as they have each required periodic visits for treatment by health care providers, have continued over an extended period of time, and cause episodic periods of incapacity.

76.    *Reasonable accommodation requests:* Wile requested and needed medical leaves of absence at various times for treatment of her alcoholism and depression. Wile also needed a reduced work day at various times for treatment of her alcoholism and depression. These medical

leaves of absence and schedule adjustments constituted reasonable accommodations for purposes of the MHRA and ADA.

77.     *Satisfactory job performance:* Wile's job performance as Accounts Receivable Manager was always at least satisfactory and often exceeded expectations. Wile's performance evaluations and merit pay raises are proof of this fact.

78.     *Adverse employment action:* On October 15, 2014, Wile was terminated from her employment with MVH. The statement by Storer and St. Pierre on October 14, 2014, the day before her termination, that Wile could transfer from her current position to a lower paying Collection Specialist position reflected an unlawful and discriminatory demotion which Wile would not have been required to accept. Wile would have accepted the demotion but was terminated on October 15, 2014 and was not provided with an opportunity to work as a Collection Specialist. To the extent that Defendant alleges that Wile failed to accept a Collection Specialist position and that Wile is responsible for not working as a Collection Specialist after October 15, 2015, Defendant's argument does not absolve it of liability for its discriminatory termination since she had no legal obligation to accept a discriminatory demotion and conditioning ongoing employment on accepting a discriminatory demotion constitutes a constructive discharge.

79.     *Defendant had a continuing need for an Accounts Receivable Manager when Wile was removed from that position:* In November 2014, Defendant promoted an employee who was not known to have or regarded as having a disability or serious health condition to the position of Accounts Receivable Manager.

80.     *Proof of pretext, discrimination, and retaliation:*

A.      MVH told the MHRC that Wile quit voluntarily, which is untrue. MVH terminated her employment.

B.      The fact that Wile's performance evaluations were all satisfactory or better, including her evaluation for 2014, is proof that Wile was not removed from her position and terminated due to poor job performance.

C.      The fact that Wile received performance based pay merit increases year after year, including in July 2014, is proof that she was not removed from her position and terminated due to poor job performance.

D.      The fact that Wile never received any disciplinary actions or performance improvement plans is proof that she was not removed from her position and terminated due to poor job performance.

E.      The fact that Defendant violated its own progressive discipline policy is proof that Wile was not removed from her position and terminated due to poor job performance.

F.      The fact that during Wile's medical leave of absence in August 2014, Human MVH Resources and Storer violated her right to medical confidentially and the fact that MVH managers/decision-makers discussed Wile's confidential medical information during her medical leave of absence is evidence of discriminatory animus toward Wile.

G.      The fact that Wile was removed from her position and terminated just one week after Defendant learned that Wile's depression is "lifelong" and that she required ongoing treatment is proof that Wile was removed from her position and terminated due to disability discrimination and retaliation for requesting and needing reasonable accommodations.

H.      It was not until Defendant became fully aware of Wile's mental health issues that they suddenly had issues with Wile's job performance.

I.      The fact that MVH has virtually no documentation to back up its claims regarding Wile's alleged poor performance in the Accounts Receivable Manager position is evidence that employment decisions were made based on subjective, discriminatory factors and not legitimate, objective business reasons.

81.     MVH knowingly and willfully violated Wile's rights under the ADA, MHRA, Rehab Act, FMLA and MFMLR.

82.     MVH unlawfully discriminated against Wile with malice or reckless indifference to her rights.

83.     As a result of MVH's unlawful discrimination against Wile, she has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, humiliation, and other pecuniary and non-pecuniary losses.

84.     Wile has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by MVH unless and until MVH is enjoined by this court.

COUNT I: MHRA<br>UNLAWFUL DISCRIMINATION

85.     Paragraphs 1-84 are incorporated by reference.

86.     MVH's conduct constitutes unlawful disability discrimination against Wile in violation of the MHRA because of disability and because of her need for and use of accommodation.

COUNT II: MHRA<br>UNLAWFUL RETALIATION

87.     Paragraphs 1-86 are incorporated by reference.

88.     MVH violated the MHRA by retaliating against Wile because she required and used medical leaves of absence and schedule adjustments as reasonable accommodations for her disabilities.

## COUNT III: ADA
## UNLAWFUL DISCRIMINATION

89.     Paragraphs 1-88 are incorporated by reference.

90.     MVH's conduct constitutes unlawful discrimination against Wile in violation of the ADA because of disability and because of her need for and use of accommodation.

## COUNT IV: ADA
## UNLAWFUL RETALIATION

91.     Paragraphs 1-90 are incorporated by reference.

92.     MVH violated the ADA by retaliating against Wile because she required and used medical leaves of absence and schedule adjustments as a reasonable accommodation for her disabilities.

## COUNT V: REHAB ACT
## UNLAWFUL DISCRIMINATION

93.     Paragraphs 1-92 are incorporated by reference.

94.     MVH's conduct constitutes unlawful discrimination against Wile in violation of the Rehab Act because of disability and because of her need for and use of accommodation.

## COUNT VI: REHAB ACT
## UNLAWFUL RETALIATION

95.     Paragraphs 1-94 are incorporated by reference.

96.     MVH violated the Rehab Act by retaliating against Wile because she required and used medical leaves of absence and schedule adjustments as a reasonable accommodation for her disabilities.

COUNT VII: FMLA

97.     Paragraphs 1-96 are incorporated by reference.

98.     MVH violated Wile's prescriptive and proscriptive rights under the FMLA.

COUNTY VIII: MFMLR

99.     Paragraphs 1-98 are incorporated by reference.

100.    MVH violated Wile's prescriptive and proscriptive rights under the MFMLR.

PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

a)      Enter Judgment in Wile's favor;

b)      Declare the conduct engaged in by Defendant to be in violation of her rights;

c)      Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate her rights;

d)      Order Defendant to employ Wile in her former position or, in the alternative, award Wile front pay and benefits;

e)      Award equitable-relief for back pay, benefits and prejudgment interest;

f)      Award compensatory damages in an amount to be determined at trial;

g)      Award punitive damages in an amount to be determined at trial;

h)      Award liquidated damages in an amount to be determined at trial;

i)      Award nominal damages;

j)      Award attorney's fees, including legal expenses, and costs;

k)      Award prejudgment interest;

14

l)      Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of disability or use of protected medical leave;

m)      Require Defendant to mail a letter to all employees notifying them of the verdict and stating that Defendant will not tolerate discrimination in the future;

n)      Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

o)      Require that Defendant train all management level employees on the protections afforded by the MHRA, ADA, Rehab Act, FMLA and MFMLR;

p)      Require that Defendant place a document in Wile's personnel file which explains that Defendant unlawfully terminated her because of disability discrimination and retaliation; and

q)      Grant to Wile such other and further relief as may be just and proper.


Dated:  January 27, 2016                     /s/ Chad T. Hansen
                                             chansen@maineemployeerights.com

                                             /s/ Peter Thompson
                                             pthompson@maineemployeerights.com


                                             Attorneys for the Plaintiff

                                             MAINE EMPLOYEE RIGHTS GROUP
                                             92 Exchange Street 2nd floor
                                             Portland, Maine 04101
                                             Tel. (207) 874-0905
                                             Fax (207) 874-0343